UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

JENNY LUZ CASTRO,

    Plaintiff,

v.                                      CASE NO. 3:15-cv-1396-J-MCR

NANCY BERRYHILL, Acting
Commissioner of the Social Security
Administration,

    Defendant.
_____/

## MEMORANDUM OPINION AND ORDER[1]

**THIS CAUSE** is before the Court on Plaintiff's appeal of an administrative decision denying her applications for a period of disability and Supplemental Security Income. Plaintiff provided an amended onset date, alleging she became disabled on June 13, 2011. (Tr. 49.) Plaintiff's claim was denied initially and on reconsideration. (Tr. 113, 132.) A hearing was held before the assigned Administrative Law Judge ("ALJ") on January 28, 2014, at which Plaintiff was represented by an attorney. (Tr. 46-67.) The ALJ found Plaintiff not disabled from May 21, 2012, the date of the application, through March 17, 2014, the date of the decision. (Tr. 26-38.)

Plaintiff is appealing the Commissioner's decision that she was not

---

[1] The parties consented to the exercise of jurisdiction by a United States Magistrate Judge. (Docs. 13, 15.)

disabled.  Plaintiff has exhausted her available administrative remedies and the case is properly before the Court.  The undersigned has reviewed the record, the briefs, and the applicable law.  For the reasons stated herein, the Commissioner's decision is **REVERSED and REMANDED.**

## I.     Standard of Review

The scope of this Court's review is limited to determining whether the Commissioner applied the correct legal standards, *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988), and whether the Commissioner's findings are supported by substantial evidence, *Richardson v. Perales*, 402 U.S. 389, 390 (1971).  "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion."  *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004).  Where the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision.  *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991); *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991).  The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision.  *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995); *accord Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992) (stating the court must scrutinize the entire record to

determine the reasonableness of the Commissioner's factual findings).

## II.  Discussion

Plaintiff raises three general issues on appeal.  First, Plaintiff argues that the ALJ failed to properly assess whether Plaintiff meets or medically equals Listing 12.05(C) and (D) in light of her prior IQ scores and severe impairments. Specifically, Plaintiff contends that the ALJ erroneously failed to recognize a valid IQ score in the range of 60 through 70 with an additional and significant work-related limitation of function in analyzing whether Plaintiff met paragraphs C or D of Listing 12.05.  Second, Plaintiff argues that the ALJ failed to properly consider the opinions of treating physician, Nadeem Hussan, M.D.  Third, Plaintiff asserts that the ALJ failed to adequately account for her limitations in concentration, persistence, or pace when making her residual functional capacity ("RFC") determination.

Defendant contends that the ALJ adequately evaluated Plaintiff's IQ scores and, in any event, that Plaintiff failed to show that she had the requisite defects in adaptive functioning to meet the requirements of Listing 12.05.  Additionally, Defendant argues that the ALJ made a proper RFC determination.

### A.   The ALJ's Decision

The ALJ found that Plaintiff had severe impairments, including degenerative disc disease, post laminectomy syndrome, right ankle tendonitis, knee arthralgia, plantar fascial fibromatosis, asthma, obesity, depression, and

provisional borderline intellectual functioning. (Tr. 28.) However, the ALJ found that Plaintiff "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d), 416.925 and 416.926)." (*Id.*)

The ALJ then determined that Plaintiff had the RFC to perform sedentary work with restrictions. (Tr. 29.) In making this determination, the ALJ afforded "significant weight" to the Medical Source Statement (the "MSS") completed by Nadeem Hussan, M.D. on November 16, 2013. (Tr. 35.) Continuing on with the evaluation, the ALJ determined that Plaintiff could not perform her past relevant work as a fast food worker and home attendant, but could perform jobs that exist in significant numbers in the national economy, such as a table worker, stem mounter, and waxer. (Tr. 37.) The ALJ ultimately concluded that Plaintiff was not disabled. (Tr. 38.)

### B.   Analysis

The undersigned notes at the outset, before even discussing Plaintiff's first argument that the ALJ erred in evaluating Plaintiff's intellectual impairments, that the ALJ erred in weighing the opinions of Dr. Hussan, Plaintiff's treating physician. The ALJ's RFC determination does not need to include or account for every limitation contained in a medical opinion. *See, e.g., Vermillion v. Comm'r of Social Sec.*, No. 6:12–cv–1572–Orl–GJK, 2014 WL 906119, at *3 (M.D. Fla.

March 7, 2014) ("It is axiomatic that the ALJ's RFC determination does not have to include or account for every limitation contained in a medical opinion"). However, "[t]he ALJ is required to provide a reasoned explanation as to why he chose not to include a particular limitation in his RFC determination." *Krauss v. Comm'r of Social Sec.*, No. 6:13–cv–640–Orl–GJK, 2014 WL 4639143, at *3 (M.D. Fla. Sept. 16, 2014) (citing *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178-79 (11th Cir. 2011) and *Monte v. Astrue*, No. 5:08–cv–101–Oc–GRJ, 2009 WL 210720, at *6–7 (M.D. Fla. Jan.28, 2009)).  For this reason, reversal is required where an ALJ fails to sufficiently articulate the reasons supporting his decision to reject portions of a medical opinion while accepting others.  *See Kahle v. Comm'r of Soc. Sec.*, 845 F. Supp. 2d 1262, 1272 (M.D. Fla. 2012) (finding that the ALJ failed to sufficiently articulate the reasons supporting his decision to reject examining physician's opinion that plaintiff's impairments could limit the use of upper body movements and coordinated activities with the hands).

Here, the ALJ accorded "significant weight" to the opinions of Dr. Hussan and made the following RFC determination:

> [C]laimant has the [RFC] to perform sedentary work as defined in 20 CFR 416.967(a) with the use of a walker; no climbing; only occasional stooping, crouching, crawling, kneeling, and balancing; and, no exposure to concentrated vibrations, hazards, fumes, gases, or poorly ventilated areas.  The claimant is limited to simple routine tasks with no exposure to the public and no independent goal setting.  The claimant is limited to jobs that do not require reading.

5

(Tr. 29.)  Despite according "significant weight" to Dr. Hussan's opinions, however, the ALJ failed to incorporate certain limitations provided by Dr. Hussan. Namely, Dr. Hussan reported in the MSS that: (a) Plaintiff's impairments are "frequently" severe enough to interfere with the attention and concentration required to perform even *simple* work-related tasks; (b) Plaintiff can only sit in fifteen (15) minute increments; (c) Plaintiff would be required to take unscheduled breaks ("every hour at times") during an 8-hour workday that would last 15-20 minutes before returning to work; and (d) Plaintiff would miss work more than four (4) times per month.[2]  (Tr. 915-16.)  The ALJ failed to articulate any reasons supporting her decision to exclude these limitations from her RFC finding.  The ALJ's error in this regard is underscored by the vocational expert's testimony, explaining that missing more than two days of work per month would preclude Plaintiff from continual employment and explaining that Plaintiff would be unable to maintain continual employment if she were to be off-task more than 20 percent of the workday.  (Tr. 64, 66.)  Because the ALJ's decision did not sufficiently explain why the foregoing limitations were not included in her RFC finding, the case must be remanded.  See *Krauss*, 2014 WL 4639143, at *3 ("[T]he Court is unable to conduct a meaningful review of the ALJ's decision not to include or to otherwise account for a limitation to which he otherwise gave significant weight.");

---

[2] Dr. Hussan also opined in the November 26, 2013 MSS that Plaintiff is not currently capable of working a full-time job on a sustained basis, "though potential exists."  (Tr. 916.)

*Perales v. Astrue*, No. 8:11-cv-475-T-JRK, 2012 WL 3744514, at *6 (M.D. Fla. Aug. 29, 2012) ("The ALJ assigned 'great weight' to the opinion of Dr. Oates and Nurse Practitioner Friend. In doing so, the ALJ summarized their opinion as limiting Plaintiff to sedentary work. The ALJ failed to recognize, however, that the same opinion to which she assigned 'great weight' indicated Plaintiff would miss approximately three (3) days of work per month. At the hearing, the VE specifically testified that if Plaintiff missed three (3) days of work per month, Plaintiff would be precluded from retaining the jobs identified. . . In this regard, the ALJ's Decision is not supported by substantial evidence.") (internal citations omitted).[3]

Turning to the issue of Plaintiff's alleged intellectual impairments, Plaintiff contends that the ALJ erred as a matter of law at step three of the sequential analysis by failing to consider listings 12.05(C) and (D). The undersigned agrees. Listing 12.05 provides in relevant part:

> [I]ntellectual disability refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset of the impairment before age 22. The required level of severity for this disorder is met when the requirements in A, B, C, or D are satisfied. . .

---

[3] It is important to note that the Commissioner does little, if anything, to rebut Plaintiff's argument on this issue. The Commissioner merely recites that the ALJ accorded significant weight to, *inter alia*, Dr. Hussan's opinions and that the ALJ evaluated the medical evidence of record and made her RFC determination. (Doc. 22 at 10.)

20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.05. Listing 12.05(C) requires "[a] valid verbal, performance, or full scale I.Q. of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function." *Id.* Thus, for an impairment to meet the requirements of Listing 12.05(C), there must be deficits in adaptive functioning initially manifested prior to age 22, as well as both an IQ score in the range of 60 to 70 and a physical or other mental impairment. *Id.* Listing 12.05(D) requires "[a] valid verbal, performance, or full scale I.Q. of 60 through 70, resulting in at least two of the following: [1] Marked restriction of activities of daily living; [2] Marked difficulties in maintaining social functioning; [3] Marked difficulties in maintaining concentration, persistence, or pace; or [4] Repeated episodes of decompensation, each of extended duration." *Id.*

In 2001, the Eleventh Circuit held "there is a presumption that [intellectual disability] is a condition that remains constant throughout life." *Hodges v. Barnhart*, 276 F.3d 1265, 1266 (11th Cir. 2001). Because of this, a plaintiff generally "meets the criteria for presumptive disability under section 12.05(C) when the claimant presents a valid [IQ] score of 60 to 70 inclusive, and evidence of an additional mental or physical impairment that has more than 'minimal effect' on the claimant's ability to perform basic work activities." *Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992) (citing *Edwards by Edwards v. Heckler*, 755 F.2d 1513, 1517 (11th Cir. 1985)). Valid low IQ scores after the age of 22 create a

presumption that the plaintiff had deficits in adaptive functioning manifested prior to age 22. *Hodges*, 276 F.3d at 1269. Even if a claimant demonstrates low IQ scores, however, the Commissioner may rebut the presumption of mental impairment before age 22 by presenting evidence of Plaintiff's daily life. *Id.*

The Eleventh Circuit has recognized that "a valid [IQ] score need not be conclusive of [intellectual disability] where the [IQ] score is inconsistent with other evidence in the record on the claimant's daily activities and behavior." *Lowery*, 979 F.2d at 837 (citing *Popp v. Heckler*, 779 F.2d 1497, 1499 (11th Cir. 1986)). However, "[a]lthough the ALJ is allowed some leeway to evaluate other evidence when determining the validity of an [IQ] score, an ALJ may not consider a claimant's age, education, and work experience after the ALJ accepts the [IQ] score as valid and finds that the claimant meets or equals the criteria of the listed impairment." *Lowery*, 979 F.2d at 837 (citing *Ambers v. Heckler*, 736 F.2d 1467, 1470 (11th Cir. 1984)).

Here, the record evidence shows that Plaintiff had a verbal comprehension IQ of 63 and a processing speed IQ of 68.[4] (Tr. 699.) The record also reveals a physical or other mental impairment. (Tr. 28.) Despite this evidence, the ALJ erred in failing to even discuss listing 12.05 in the decision, although the ALJ discussed listings 12.02, 12.04, and 12.06 (Tr. 28-29). *See, e.g., Slater v. Astrue*,

---

[4] The record also reveals that: (a) in the "Diagnosis" section of her report, Dr. Humphreys reported "Axis II: R/O 317 Mild Mental Retardation," (Tr. 667); and (b) that Plaintiff obtained a special diploma from high school (Tr. 698).

No. 2:11-cv-372-TFM, 2012 WL 999799, at *7 (M.D. Ala. Mar. 23, 2012) (holding that the ALJ erred in failing to consider whether IQ scores of 60, 62, and 64 met listing 12.05 and noting "that the ALJ directly addressed and discussed the Listings for 12.04 and 12.06, looking at the 'paragraph B' and 'paragraph C' requirements, but conspicuously failed to address the 12.05(C) Listing that was directly argued by the Claimant"); *Fitts v. Massanari*, No. CA 00-624-BH-C, 2001 WL 530475, at *3 (S.D. Ala. May 7, 2001) (remanding case and "not[ing] that the ALJ made an error more fundamental regarding the listings in that he never once mentioned Listing 12.05, specifically 12.05(C), in his decision denying benefits").

The Commissioner recognizes the evidence of record, but argues that an IQ score is not determinative of whether an individual meets or equals a listing. While this is true, the validity of an IQ score must be addressed by the ALJ.[5] *See Thomas v. Barnhart*, No. 04-12214, 2004 WL 3366150, at *2-3 (11th Cir. Dec. 7, 2004) (noting that the ALJ failed to consider the validity of the plaintiff's IQ score of 69 and that a reversal with remand to the Secretary is warranted where the ALJ fails to apply the correct legal standards).[6] As stated above, a plaintiff generally "meets the criteria for presumptive disability under section 12.05(C) when the claimant presents a valid [IQ] score of 60 to 70 inclusive, and evidence

---

[5] Notably, the ALJ accorded "significant weight" to the opinions of Dr. Benet, who made the findings with respect to Plaintiff's IQ scores. (Tr. 36.)

[6] In the Eleventh Circuit, "[u]npublished decisions are not binding precedent, but they may be cited as persuasive authority." 11th Cir. R. 36-2.

of an additional mental or physical impairment that has more than 'minimal effect' on the claimant's ability to perform basic work activities." *Lowery*, 979 F.2d at 837. Since the ALJ did not discuss Listing 12.05, she obviously did not discuss the validity of Plaintiff's IQ scores in the context of whether the rebuttable presumption applies. While the ALJ did reference a higher, full-scale IQ score of 72 that was rendered at the same time, the ALJ was required to consider the lower IQ scores. *See* 20 C.F.R. pt. 404, Subpt. P, App. 1 § 12.00 (c)(6)(c) ("In cases where more than one IQ is customarily derived from the test administered, e.g., where verbal, performance, and full scale IQs are provided in the Wechsler series, we use the lowest of these in conjunction with 12.05."); *Ambers v. Heckler*, 736 F.2d 1467, 1470 (11th Cir. 1984).

Moreover, the undersigned is unpersuaded by the Commissioner's reference to *Frame v. Comm'r of Soc. Sec.*, 596 F. App'x 908 (11th Cir. 2015). In *Frame*, unlike here, the Eleventh Circuit found that the ALJ fully considered the validity of the claimant's IQ score and properly rejected it as not credible. 596 F. App'x at 912; *see also Leslie v. Colvin*, No. 2:15-cv-286-VEH, 2016 WL 3906430, at *6-7 (N.D. Ala. July 19, 2016) (providing a more thorough discussion on this point of distinction). As discussed above, the ALJ failed here to consider the validity of Plaintiff's verbal IQ score of 63 and processing speed IQ score of 68, and failed to even discuss Listing 12.05, thereby mandating remand.

Accordingly, the Commissioner's decision is due to be remanded because

the ALJ failed to explain why she failed to incorporate the limitations provided by Dr. Hussan into her RFC finding and failed to discuss Listing 12.05 and the validity of Plaintiff's IQ scores of 63 and 68. In light of this conclusion, the Court finds it unnecessary to consider Plaintiff's contention that the ALJ failed to properly evaluate Plaintiff's limitations in concentration, persistence, or pace. *Jackson v. Bowen*, 801 F.2d 1291, 1294 n.2 (11th Cir. 1986). However, the ALJ will be directed to re-consider Plaintiff's RFC, if necessary.

Accordingly, it is **ORDERED**:

1. The Commissioner's decision is **REVERSED** pursuant to sentence four of 42 U.S.C. § 405(g) and **REMANDED** with instructions to the ALJ to: (a) consider whether Plaintiff meets or medically equals the criteria of intellectual disability in accordance with this opinion; (b) if necessary, reconsider Dr. Hussan's opinions, explain what weight they are being accorded, and the reasons therefor; (c) if necessary, reconsider Plaintiff's RFC; and (d) conduct any further proceedings deemed appropriate.

2. The Clerk of Court is directed to enter judgment consistent with this Order and close the file.

3. Plaintiff's counsel is advised that, in the event benefits are awarded on remand, any § 406(b) or § 1383(d)(2) fee application shall be filed within the parameters set forth by the Order entered in Case No.: 6:12-124-Orl-22 (*In re: Procedures for Applying for Attorney's Fees Under 42 U.S.C. §§ 406(b) &*

*1383(d)(2))*. This Order does not extend the time limits for filing a motion for attorney's fees under the Equal Access to Justice Act, 28 U.S.C. § 2412.

**DONE AND ORDERED** at Jacksonville, Florida, on March 20, 2017.

MONTE C. RICHARDSON
UNITED STATES MAGISTRATE JUDGE

Copies to:

Counsel of Record